

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## No. PD-0039-09

### THE STATE OF TEXAS

### v.

### HARVILL BLACKSHERE, Appellee

**On Discretionary Review of
Case No. 11-07-00030-CR of
the Eleventh Court of Appeals,
Brown County**

Womack, J., delivered the opinion of the unanimous Court.

This case involves a State's appeal from a trial court's orders suppressing evidence and terminating a prosecution.

In the District Court

The appellee was indicted in Brown County for possession of methamphetamine. More than two years passed. Four days before trial, a detective from the Brownwood Police Department discovered that the methamphetamine that the appellee was accused of possessing was missing from the Department's evidence vault.

The appellee then filed a Motion to Suppress, arguing that evidence related to the methamphetamine should be suppressed because the State violated certain constitutional and statutory provisions by misplacing the methamphetamine. The trial court decided to "carry" the Motion to Suppress, so that it could rule after hearing the evidence presented at the trial.

Trial before a jury began on February 6, 2007. After the testimony of the first six witnesses,[1] the State said that it had presented all its evidence that was relevant to the appellee's Motion to Suppress. The court made an oral ruling that it was suppressing the evidence and dismissing the jury, but that it was not dismissing the case or directing a verdict of acquittal. The discussion after the ruling shows that there was some confusion about the ruling and the State's ability to appeal:

> THE COURT: … I find that on balance that I cannot … admit the evidence. … I find that the defense has minimally shown that the State – and the State being the Police Department and its procedures that were woefully inadequate, obviously, and the custodian himself who is currently incarcerated, that justice can't be done in this matter because of the State's actions attributed in that regard based on a showing that the Defense has established under a totality of the evidence. So I suppress the evidence. I dismiss the case against this Defendant. I'm going to discharge the jury and the State will be able to appeal this ruling of the Court if it desires.
>
> …
>
> [DEFENSE COUNSEL]: Your Honor, just for clarification, I believe the Court used the word "dismissed" in this. Is it my understanding that the Court is entering a directed verdict of acquittal in this case?

---

[1] Four of the witnesses were Brownwood Police Department officers at the time of the offense. The officers testified about the circumstances of the appellee's arrest, the seizure of a substance which appeared to be methamphetamine from a vehicle in which the appellee was riding, and the submission of the substance to a DPS laboratory for testing. Another occupant of the vehicle, Willie Calvin, Jr., testified that both he and the appellee possessed methamphetamine at the time of the appellee's arrest. Finally, a DPS chemist testified on *voir dire* that a substance attributed to the appellee was submitted for testing in May 2004, and nothing about the submission suggested that the substance had been improperly handled or that the tests he performed were invalid.

THE COURT: Well, at this point, I want to be clear about that. Based on what I've heard from the evidence, the State had no other evidence other than what I've heard.

[PROSECUTOR]: That is correct. However, we would object to the Court using the word "directed verdict" because that has grave consequences for our ability –

THE COURT: I will agree. I will not use that, because I did state that – what I have done is, I have essentially dismissed the jury. I have granted your Motion to Suppress. I have excluded the evidence. And then they can take up this motion, if they want, on the Court's ruling. But there will be no further trial on this matter. If they desire to take it up, then, it will be another jury at another time. If they don't then, effectively, because of this, then, I think I will leave it to the State or the Defense can subsequently file a motion if you want.

…

But … the jury is discharged. The case itself – I did say dismissed, but I really meant dismiss the jury. So it's not a directed verdict of acquittal.

[DEFENSE COUNSEL]: We would move for a directed verdict of acquittal.

THE COURT: All right. At this point, I will deny that given – I think the rulings are clear otherwise. I don't want to prevent the State from being able to take this matter up if they desire to do so.

…

[PROSECUTOR]: That was my only concern. I don't know if we're going to or not. I just want to make sure we have the ability to if –

THE COURT: I want you to have that. I want you to have that. But I also want you to look at it real closely. And I know you will. Because I don't want this to be hanging over this defendant. Get it done.

[DEFENSE COUNSEL]: Right, Your Honor. That was our request. Because I believe that even on an acquittal, they can appeal the issue. They are just barred from further prosecution of the case. That is the reason for our request for a directed verdict of acquittal in this matter.

THE COURT: I will say this: If all the evidence is as it is right now, then I would grant it. Unless [the prosecutor] has something further – I mean, I did not specifically state that I would grant that.

[PROSECUTOR]: That is the rest of it. I would just ask that it be left as-is. If counsel would like to file a motion with the Court later, he may do so.

THE COURT: What I would ask you to do is this: The State has to give notice of intent to appeal within 30 days. If you will file a Motion to Dismiss along with the order at this point, then, given the fact that I think jeopardy has attached, you know … it would seem to me if they don't appeal it, then I will sign a dismissal at that point.

…

I don't want there to be a retrial unless there is something different and new or unless the State prevails on appeal.

A few hours after the trial ended, the State requested that the court make formal findings of fact and conclusions of law to assist the State in deciding whether to appeal.

On February 23, the trial court executed and filed a written order (which was dated February 6) that included mistrial and dismissal as dispositions of the case. The order was entitled "Order Granting Defendant's Motion to Suppress, Dismissing the Case Because of Insufficient Evidence to Sustain a Conviction, Declaring a Mistrial, and Discharging the Jury." The order stated, in part:

> [T]he Court found bad faith and dismissed the charges against the defendant and discharged the jury because the State had otherwise insufficient evidence to sustain a conviction in light of the suppression being granted and the findings of this court. ACCORDINGLY, IT IS THE ORDER of this Court that the Defendant's Motion to Suppress is granted, the State's case is dismissed due to bad faith on the part of the evidence custodian of the Brownwood Police Department resulting in insufficient evidence to sustain a conviction, a mistrial is declared, and the jury is hereby discharged.

On February 28, the trial court filed findings of fact and conclusions of law, one of which was, "The Court concluded that there was insufficient evidence remaining as a matter of law to

sustain a conviction after the State's evidence was suppressed and accordingly, a mistrial was declared, the case against the defendant was dismissed and the jury was discharged."

## In the Court of Appeals

The State appealed the trial court's orders and raised two points of error: (1) The trial court erred in granting the Motion to Suppress because the appellee had not adequately proved that the State acted in bad faith. (2) The trial court erred in declaring a mistrial as a result of the suppression of evidence.

The Court of Appeals held that the trial court erred in suppressing the evidence, and therefore sustained the State's issues on appeal, set aside the trial court's order, and remanded the case.[2] The Court's opinion did not discuss the declaration of a mistrial.

The appellee filed a Motion for Rehearing, in which he raised the issue of jurisdiction for the first time. The Court of Appeals overruled the motion.

## The Parties' Arguments

The appellee now argues, as he did in his Motion for Rehearing, that the Court of Appeals lacked jurisdiction for three reasons: (1) Article 44.01(a) of the Code of Criminal Procedure does not allow the State to appeal an order granting a mistrial; (2) Article 44.01(a)(5) does not allow the State to appeal the grant of the Motion to Suppress after jeopardy has attached; and (3) the State did not make the certification required by Article 44.01(a)(5) in order to appeal the grant of the Motion to Suppress.

The State argues that the trial court's actions terminating the prosecution should be interpreted as a dismissal of the indictment, appealable under Article 44.01(a)(1), because the

---

[2] *State v. Blackshere*, 2008 Tex. App. LEXIS 6922 (September 18, 2008).

trial court indicated that it was "dismissing the case." In the alternative, the State suggests that the trial court's actions could be interpreted as the grant of a new trial, appealable under Article 44.01(a)(3), because a trial court's use of the term "mistrial" often has been held to be the functional equivalent of an order granting a new trial. The State further argues that, even if it did not meet the requirements under Article 44.01(a)(5) to appeal the suppression ruling, the Court of Appeals had jurisdiction to consider the suppression point of error once the State properly invoked the Court's jurisdiction under Article 44.01(a)(1) or (3) to consider the termination of prosecution point of error.

Jurisdiction over Motion to Suppress Point of Error

Article 44.01(a) of the Code of Criminal Procedure says, "The state is entitled to appeal an order of a court in a criminal case if the order … (5) grants a motion to suppress evidence, a confession, or an admission, if jeopardy has not attached in the case …." By expressly limiting a State's appeal of the grant of a motion to suppress evidence to cases in which jeopardy has not attached, the statute must be construed not to authorize a State's appeal of such a ruling that was made after jeopardy had attached.

In a jury trial, jeopardy attaches at the time the jury is empaneled and sworn.[3] Because the trial court granted the motion to suppress after jeopardy attached in the present case, Article 44.01(a) did not authorize the State to appeal the ruling which was made thereafter.[4]

---

[3] *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569 (1977).

[4] *See State v. Schaeffer*, 981 S.W.2d 515, 517 (Tex. App.–Austin 1998, no pet.) ("The practice of considering pretrial motions for the first time after the trial has begun is strongly disfavored [because] the State is deprived of the opportunity to appeal the unfavorable ruling."); GEORGE E. DIX & ROBERT O. DAWSON, 43A TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 43.217 (2d ed.) ("Since the trial judge is under no obligation to rule on a motion to suppress before trial, this means a trial judge has almost if not total power to frustrate the State's 'right' to appeal by refusing to rule on the motion until after trial begins." ) (citing *Schaeffer*).

The State contends, however, that if the Court of Appeals had jurisdiction over the termination-of-prosecution point of error, the motion-to-suppress point of error could be considered by the Court under its "extended jurisdiction." Because we hold below that the jurisdiction of the Court of Appeals to consider the termination-of-prosecution point of error was not properly invoked, we need not address the State's extended-jurisdiction theory.

Jurisdiction over Termination of Prosecution Point of Error

The parties' primary arguments could be said to turn on the appropriate labels to attach to the trial court's termination of the prosecution and the State's resulting authority to appeal under Article 44.01(a). In the record and the briefs, four labels can be found. The trial court indicated in its oral ruling that it was only *discharging the jury*.[5] The trial court's written order stated that, in addition to discharging the jury, the trial court both *dismissed the case* and *declared a mistrial*. Finally, the State now suggests that the trial court effectively *granted a new trial*.[6]

But we begin by recognizing that the State's appeal of the trial court's actions violates the law of double jeopardy. This Court's interpretation of Article 44.01 recognizes that double-jeopardy law serves as the key boundary to the State's right to appeal under the statute. We look to Supreme Court decisions when we consider the limits of the State's right to appeal under Article 44.01.[7] We presume that the legislature intended to enact a constitutional statute. We

---

[5] "But … the jury is discharged. The case itself – I did say dismissed, but I really meant dismiss the jury."

[6] The State mentions another possible argument, that "[o]nce jurisdiction is properly invoked on one issue, an appellate court will acquire jurisdiction over the entire case," and cites the decision of the Texas Supreme Court in *Brown v. Todd*, 53 S.W.3d 297 (Tex. 2001). The State fails, however, to make any argument for applying the extended-jurisdiction doctrine to the context of State appeals of criminal matters under Article 44.01. The argument is therefore inadequately briefed.

[7] *State v. Moreno*, 294 S.W.3d 594, 599-600 (Tex. Cr. App. 2009).

should avoid an unnecessary construction of the statute that would give the State a right to an appeal that would result in a prosecution that would violate the Double Jeopardy Clause. Therefore we shall proceed directly to consider whether the Double Jeopardy Clause prohibits a State's appeal of the trial court's actions, however they may be labeled for statutory purposes.

A defendant's double-jeopardy protections are found in the Fifth Amendment to the United States Constitution, which provides that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb."[8] The "controlling constitutional principle [of the Double Jeopardy Clause] focuses on prohibitions against multiple trials."[9] Two conditions are therefore necessary to implicate double jeopardy in the context of a State's appeal: (1) jeopardy must have "attached," as when a jury is empaneled and sworn in a jury trial, and (2) the State's appeal must threaten the defendant with an impermissible successive trial.[10]

One of the most fundamental rules of double-jeopardy jurisprudence is that when a trial ends in an acquittal, the defendant may not be tried again for the same offense.[11] Whether the acquittal is "based on a jury verdict of not guilty or on a ruling by the court that the evidence is

---

[8] The double jeopardy protections of the Fifth Amendment apply to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794 (1969). We have found such Fifth Amendment protections to be "substantially identical" to those afforded under the Texas Constitution. *Ex parte Mitchell*, 977 S.W.2d 575, 580 (Tex. Cr. App. 1997).

[9] *Martin Linen*, 430 U.S., at 569 ("At the heart of this policy is the concern that permitting the sovereign freely to subject the citizen to a second trial for the same offense would arm Government with a potent instrument of oppression. The Clause, therefore, guarantees that the State shall not be permitted to make repeated attempts to convict the accused, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity as well as enhancing the possibility that even though innocent he may be found guilty. Society's awareness of the heavy personal strain which a criminal trial represents for the individual defendant is manifested in the willingness to limit the Government to a single criminal proceeding to vindicate its very vital interest in enforcement of criminal laws.") (internal punctuation and citation omitted).

[10] *Martin Linen*, 430 U.S., at 569-70; *State v. Moreno*, 294 S.W.3d, at 597.

[11] *Martin Linen*, 430 U.S., at 571; *State v. Moreno*, 294 S.W.3d, at 597-98.

insufficient to convict," any further prosecution, including an appeal by the prosecution that would lead to a second trial, is prohibited.[12] Even where an acquittal is based on an "egregiously erroneous foundation,"[13] such as erroneous exclusion of evidence[14] or erroneous weighing of evidence,[15] the acquittal bars appellate review of the ultimate disposition as well as the underlying foundation.[16]

The Supreme Court of the United States has emphasized that what constitutes an "acquittal" is not controlled by the form of the judge's action.[17] For jeopardy purposes, a defendant is acquitted when "the ruling of the judge, whatever its label, actually represents a

---

[12] *United States v. Scott*, 437 U.S. 82, 91 (1978); *State v. Moreno*, 294 S.W.3d, at 598. The critical exception within this rule is that the state may appeal an acquittal rendered by the trial court following a jury verdict of guilt. Appeal of such an acquittal is permissible because reversal on appeal would not subject the defendant to a successive trial, but would rather simply reinstate the jury's original verdict of guilt. *Wilson*, 420 U.S., at 344-45, 352-53.

[13] *Fong Foo v. United States*, 369 U.S. 141, 143 (1962).

[14] *State v. Moreno*, 294 S.W.3d, at 600 (finding exclusion of witness testimony "unacceptable and inexcusable," but barring appeal of acquittal based on resulting insufficiency of remaining evidence).

[15] *Fong Foo*, 369 U.S., at 142 (finding acquittal based on poor credibility of prosecution witnesses and improper conduct of prosecutor was "egregiously erroneous").

[16] *Sanabria v. United States*, 437 U.S. 54, 68-69 (1978) (After erroneously interpreting an indictment, a trial court excluded certain evidence relevant to the offense charged. The actions of the trial court were "properly to be characterized as an erroneous evidentiary ruling, which led to an acquittal for insufficient evidence. That judgment of acquittal, however erroneous, bars further prosecution on any aspect of the count and hence bars appellate review of the trial court's error."); *see also Moreno v. State*, 807 S.W.2d 327, at 332 n.6 (Tex. Cr. App. 1991) ("Of course, it is well settled that a verdict of acquittal can not be reviewed regardless of how egregiously wrong the verdict may be.").

[17] *Martin Linen*, 430 U.S., at 571; *see also Moreno v. State*, 807 S.W.2d, at 332 ("The mere label attached either to the defendant's motion or to the trial court's order ruling on same cannot determine its appealability under 18 U.S.C., Section 3731. … An appellate court, in order to determine its jurisdiction, must look to the effect of any orders concerning an indictment or information, not what the trial court or the parties at trial have labeled such orders."); *State v. Moreno*, 294 S.W.3d, at 598 (In determining whether an appeal is jeopardy barred, "we are not bound by the trial judge's label; instead, we must examine the substance of the order.").

resolution, correct or not, of some or all of the factual elements of the offense charged."[18] For example, the United States Supreme Court held in *Martin Linen* that a judgment of acquittal, entered by a trial court after a jury became "hopelessly deadlocked," was an acquittal in substance as well as form despite the government's characterization of the trial court's action as a mistrial.[19] In entering the judgment of acquittal, the trial court recorded its view that the government "ha[d] failed to prove the material allegations beyond a reasonable doubt," and that the defendant should be found not guilty.[20] Because the trial court evaluated the government's evidence and determined that it was legally insufficient to sustain a conviction, double jeopardy barred appeal of the acquittal.[21]

In another example, this court held in *State v. Moreno* that an order granting the defendant's motion for directed verdict and dismissing the case was an acquittal.[22] A key witness for the State in *Moreno* failed to appear on time for the trial. The State conceded that it had no additional witnesses, but refused to rest its case and asked for more time since the key witness literally had just arrived at the courthouse. The court refused to allow more time, and the defendant moved for a directed verdict. The court granted the motion because the State had not proved all of the elements of the offense.[23] Despite our opinion that the trial court's exclusion of

---

[18] *Martin Linen*, 430 U.S., at 57. *See Smith v. Massachusetts*, 543 U.S. 462, 468 (2005); *State v. Stanley*, 201 S.W.3d 754, 760 (Tex. Cr. App. 2006).

[19] 430 U.S., at 572.

[20] *Id.*

[21] *Id.*

[22] 294 S.W.3d, at 600.

[23] *Id.*, at 596-97.

the witness was "unacceptable and inexcusable," we nonetheless recognized that the trial court had ruled explicitly that the State's evidence had not met the required elements, and appeal from such an acquittal was prohibited by the Double Jeopardy Clause.[24]

In contrast is the Supreme Court's decision in *United States v. Scott* that an appeal from a dismissal was not jeopardy barred.[25] During his trial, Scott moved to dismiss counts of the indictment against him on the grounds that his defense had been prejudiced by preindictment delay.[26] The trial court granted Scott's motion at the close of all the evidence. The Supreme Court held that, while the trial court's ruling may have been based on facts outside the indictment, the ruling was not based on a conclusion that the government had not produced sufficient evidence to establish guilt.[27] The Court therefore held that Scott suffered no injury cognizable under the Double Jeopardy Clause when the government appealed the dismissal.[28]

Similarly, in *State v. Stanley*, this court held that an order dismissing a prosecution, on the grounds that it proceeded under an unconstitutional ordinance, could be appealed by the State.[29]

---

[24] *Id.*, at 600; *see also Smith*, 543 U.S., at 469 (finding acquittal where the trial court evaluated the Commonwealth's evidence and determined that it was legally insufficient to sustain a conviction); *Smalis v. Pennsylvania*, 476 U.S. 140 (1986) (finding acquittal where the trial court granted a demurrer at the close of the prosecution's case and dismissed the charges on grounds that the evidence was legally insufficient to support a conviction); *Hudson v. Louisiana*, 450 U.S. 40 (1981) (finding a successive prosecution violated double jeopardy where the trial court granted a motion for new trial based on legal insufficiency of the evidence); *United States v. Sisson*, 399 U.S. 267 (1970) (finding acquittal where a motion in arrest of judgment was granted based on insufficient evidence adduced at trial); *State v. Savage*, 933 S.W.2d 497, 499 (Tex. Cr. App. 1996) (finding acquittal where a motion for new trial was granted based on insufficiency of the evidence).

[25] 437 U.S. 82 (1978).

[26] *Id.*, at 84.

[27] *Id.*, at 95.

[28] *Id.*, at 99.

[29] 201 S.W.3d 754 (Tex. Cr. App. 2006).

The appellees in *Stanley* were tried for violation of a city ordinance prohibiting demonstrations in school zones. The appellees filed a motion to dismiss before the trial on grounds that the ordinance was unconstitutional, but the trial court decided to "carry the motion along until [it] hear[d] the trial on the merits."[30] After the evidence was closed and the case was submitted to the trial court as fact-finder, the court granted the appellees' motion to dismiss. We said that the trial court's consideration of the guilt or innocence of the appellees "was contingent upon [the trial judge's] first ruling upon the constitutional validity of the ordinance. In essence, having ruled in the appellees' favor on that issue, he never reached the contingent issue of their guilt or innocence."[31] Because the trial court's order did not purport to resolve any of the factual elements of the offense, we did not construe the trial court's order as an acquittal, and there was no double-jeopardy impediment to the State's appeal.[32]

Here, there is little doubt that the trial court did not intend to acquit the appellee, in such terms. In fact, the parties and the trial court explicitly discussed avoiding the term "directed verdict of acquittal" in order to preserve the State's ability to appeal. But the intent and form of the trial court's actions cannot trump the substance of the protections afforded by the Double Jeopardy Clause. Whatever label we may affix to its actions, the trial court ultimately terminated the prosecution based on its finding that the State's remaining evidence was legally insufficient to convict the appellee. Not only did the trial court's oral ruling imply that it had made such a finding, but its written order and conclusions of law were quite explicit: "[T]he Court found bad

---

[30] *Id.*, at 756.

[31] *Id.*, at 759.

[32] *Id.*, at 759-60.

faith and dismissed the charges against the defendant and discharged the jury because the State had otherwise insufficient evidence to sustain a conviction in light of the suppression being granted and the findings of this court." And the trial court's conclusions of law stated, "The Court concluded that there was insufficient evidence remaining as a matter of law to sustain a conviction after the State's evidence was suppressed and accordingly, a mistrial was declared, the case against the defendant was dismissed and the jury was discharged."

This finding, in the words of the Supreme Court, "actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged."[33] The trial court explicitly decided that the State's remaining evidence was legally insufficient to convict the appellee of the offense and, on that basis, terminated the prosecution. Therefore, the trial court's actions were functionally an acquittal for purposes of double jeopardy.[34] Whether there was an underlying error in suppressing evidence is irrelevant; such an underlying error cannot be reviewed after an acquittal for insufficient evidence.[35]

We therefore reverse the decision of the Court of Appeals and remand this case to that court for further proceedings not inconsistent with this opinion.

Delivered June 22, 2011.
Publish.

---

[33] *Martin Linen*, 430 U.S., at 571.

[34] *See, e.g., Smalis*, 476 U.S., at 144 ("[A] ruling that as a matter of law the State's evidence is insufficient to establish his factual guilt … is an acquittal under the Double Jeopardy Clause.").

[35] *Sanabria*, 437 U.S., at 68-69.