**Reversed and Remanded and Memorandum Opinion filed July 9, 2015.**



In The

# Fourteenth Court of Appeals

### NO. 14-14-00746-CR

### THE STATE OF TEXAS, Appellant

### V.

### HECTOR PENA, Appellee

**On Appeal from the 212th District Court
Galveston County, Texas
Trial Court Cause No. 12CR3366**

## M E M O R A N D U M   O P I N I O N

The State indicted appellee, Hector Pena, for manslaughter. A jury found him guilty of the lesser-included offense of criminally negligent homicide and assessed punishment at four years' confinement. Appellee moved for a new trial in part because the trial court failed to quash the indictment before trial. The trial court granted the motion, and the State brings this interlocutory appeal. *See* Tex. Code Crim. Proc. Ann. art. 44.01(a)(3). We reverse and remand with instructions to reinstate the trial court's judgment.

## I.     BACKGROUND

A grand jury returned an indictment against appellee as follows:

> HECTOR A. PENA, on or about the 24th day of September, 2012 and anterior to the presentment of this indictment in the County of Galveston and State of Texas, did then and there recklessly cause the death of an individual, namely, Christina Marie Lopez, by failing to make a proper right hand turn at an intersection; to wit: by failing to make the approach and right hand turn as closely as possible to the right hand curb or edge of the roadway, by failing to exercise due care to avoid colliding with Christina Marie Lopez on a roadway, by failing to give warning by sounding the horn to Christina Marie Lopez when necessary, by failing to exercise proper precaution on observing a child Christina Marie Lopez on a roadway, by running over Christina Marie Lopez with a motor vehicle.

Appellee filed a pretrial motion to quash or dismiss the indictment, arguing that the indictment was deficient because it failed to state an offense and failed to leave nothing to inference. He argued, "Specifically, the indictment fails to say the criminal act(s) from which the trier of facts may infer that Pena acted with the required recklessness." In a subsequent memorandum and hearing, appellee argued that the State's alleged acts of recklessness were inadequate to establish recklessness, and therefore, the indictment was deficient under Article 21.15 of the Code of Criminal Procedure.[1] The trial court denied the motion, and appellee proceeded to a jury trial.

---

[1] Article 21.15 states:

> Whenever recklessness or criminal negligence enters into or is a part or element of any offense, or it is charged that the accused acted recklessly or with criminal negligence in the commission of an offense, the complaint, information, or indictment in order to be sufficient in any case must allege, with reasonable certainty, the act or acts relied upon to constitute recklessness or criminal negligence, and in no event shall it be sufficient to allege merely that the accused, in committing the offense, acted recklessly or with criminal negligence.

Tex. Code Crim. Proc. Ann. art. 21.15.

The State presented evidence that shortly before 8:00 a.m. on a Monday, Lopez, an eleven-year-old girl, was sitting in the northbound lane of 26th Street in the City of Texas City waiting for her school bus. There was dew on the grass, and the road had no curb or sidewalk.

Appellee was Lopez's neighbor. Appellee was bobtailing his semi-truck (driving a tractor-trailer without the trailer) on his way to work that morning. He drove east on 30th Avenue and made a wide right turn onto 26th Street, going southbound. He told police that he made the turn at two to three miles per hour. Appellee saw Lopez sitting in the street. He thought he could make the turn safely and not strike Lopez. He told police, "I figured the little girl would move."

While making the turn, appellee lost sight of Lopez. His front left tire went into the grass on the northbound side of 26th Street while he made the turn. Then, he felt the rear tire of his truck run over something. It was Lopez. Appellee saw Lopez's body in his mirror and slammed on the brakes, leaving a one-foot skid mark on the road. He got out and tried to call 911, but his hands were shaking and he was in a state of shock. He flagged down a motorist who called 911. By that time, Lopez had died. An investigation ensued.

The police found a tuft of hair around a bolt in the battery box of the truck, which is also part of the steps leading to the driver's door. The battery box is located behind the front left wheel, and there is a gap between the wheel and the box. Other biological material, including blood, was found on the fuel tank located between the battery box and the rear left wheels. Tread marks on Lopez's body matched the rear left tires and not the front left tire, which had a different tread pattern. There was some black, greasy material on Lopez's skin and clothing. The police found grass on the front left tire but none on the rear tires. There was also a

3

faint, thirty-two-foot tire path in the grass on the northbound side of the street. No physical evidence indicated that Lopez was struck by the front bumper or tire.

Corporal Chet Rich was one of the officers who investigated this case, and he prepared the accident report. He believed the first place the truck struck Lopez was by the battery box or side step where the clump of hair was found. Rich looked in the front left wheel well and did not see any material or items in there that led him to believe Lopez was somehow inside the front left wheel well.

The medical examiner testified that Lopez died of multiple blunt trauma, injuries consistent with being run over by a motor vehicle. The medical examiner opined that Lopez was struck by the front bumper of the vehicle hard enough to knock her down, and then she was caught up under the undercarriage. There were injuries to Lopez's head, but it was definitely not run over by a tire. The medical examiner testified that "somehow her head got probably inside the wheel well, on the inside of the truck, on the inside of the wheel where there is a tight space, and then as her body came around the axle, the head got squeezed between a small space on the inside of the wheel." The medical examiner also admitted, however, that he had not reviewed police reports from the case, did not inspect the wheel well, never spoke with any police officers about the case, and did not put his theory in writing any time before his testimony.[2] Due to the lack of physical evidence on

---

[2] The medical examiner met with the prosecutor the week before trial, and that was "the first time the question was ever asked of me, What part of the truck do you think might have hit her? And that's when I was looking at her and I said, I think I know what happened." The defense also elicited testimony from police officers that the prosecutor spoke with them the week before trial about how the accident report should be changed "to make it as accurate as possible." Accordingly, Rich made changes to his accident report "for the trial." The first three accident reports indicated that Lopez's sitting in the street was a "contributing factor" to the accident. Rich removed this contributing factor in the fourth accident report a week before trial. The fourth report also included, for the first time, that appellee's "failure to control speed" was a contributing factor to the accident.

4

the front of the truck or wheel well, the medical examiner acknowledged, "You cannot say either way," about whether Lopez was struck by the front of the truck.

When her body was brought to the medical examiner, a Butterfinger candy bar was clinched in Lopez's left hand. The candy bar was "significantly flattened," but Lopez's hand was not. The medical examiner testified that a tire did not run over Lopez's hand.

The defense expert, Robin Wright, was a qualified accident reconstructionist who had worked for the Department of Public Safety for over three decades and was involved in over 4,000 accident reconstructions. He testified that the medical examiner's theory of the accident was "completely wrong." Wright believed that Lopez reached into the void between the rear of the front fender and the battery box to obtain something, such as the candy bar, and she was struck in the head by the battery box. The impact knocked her to the ground, and she was ultimately run over by the back tires. He testified, "She went in through the side, not under the front." Wright explained that it was impossible for the front tire to make the thirty-two-foot tire mark in the grass without a rear tire also exiting the roadway because the length from the front wheel axle to the rear wheel axle was only 24.2 feet. But unlike the front tire, the rear tires did not have grass on them.

The trial court took judicial notice that Defense Exhibit 29 was from a publication by the Department of Public Safety, the Texas Commercial Motor Vehicle Driver Handbook. Wright testified that Exhibit 29 diagramed the proper and improper ways for a bobtailing truck to make a right turn. Wright explained that the proper way "is to make the turn as wide as practical or as necessary in order to make the turn and remain[] in the lane of traffic that you're turning out of."

The State also presented video evidence of police officers reenacting the scene. The video showed that a truck could have made the wide right turn at the intersection without exiting the roadway or striking Lopez.[3]

The jury was charged on manslaughter and the lesser-included offense of criminally negligent homicide. The jury deliberated over the course of three days, ultimately acquitting appellee of manslaughter and finding him guilty of criminally negligent homicide. The jury assessed punishment at four years' confinement, and the trial court signed a judgment in accordance with the jury's verdict.

Appellee filed a notice of appeal and a motion for new trial. Appellee urged three specific grounds in the motion: (1) failure to quash the indictment due to the indictment alleging acts of mere negligence, not recklessness; (2) legally insufficient evidence, and appellee asked the trial court to vacate the conviction and enter a judgment of not guilty; and (3) potential jury misconduct whereby appellee asked the trial court to subpoena jurors to determine whether any jurors resorted to the Internet or similar sources during the trial.

After a hearing at which no evidence was taken, the trial court granted appellee a new trial.[4] In its new trial order, the court specifically struck through the line that stated, "The Evidence being legally insufficient to sustain the conviction, the indictment is hereby Dismissed with prejudice." The trial court did not authorize subpoenaing the jurors.

The State requested findings from the trial court to "list a reason(s) to overturn the jury's verdict." The trial court signed findings of fact and conclusions

---

[3] Appellee argued to the jury that because video revealed a wide right turn could be made without striking Lopez, she probably moved into the truck's path.

[4] The trial court did not make oral findings. *See* Tex. R. App. P. 21.8(b) (trial court may make oral findings).

of law.  However, appellee notes that the findings are "ambiguous."[5]  The State notes that the trial court made several findings about the evidence at trial varying from the indictment allegations, although appellee did not make a variance argument in his motion for new trial.[6]  The trial court made other findings that are unrelated to any grounds urged in appellant's motion.[7]  The trial court also addressed appellant's motion to quash:

- "The Defendant moved to quash the indictment for lack of specificity as to the allegation of recklessness."
- "The Texas Code of Criminal Procedure [Article] 21.15 requires specific allegations with respect to allegations of Reckless or Criminal Negligence."
- "The facts developed at trial do not support an allegation of reckless conduct, and if they had been pled as developed at trial an initial charge of criminally negligent homicide may have been the sole possible charge."

The State filed a notice of appeal, and this court abated appellee's appeal in Cause No. 14-14-00599-CR pending resolution of the State's appeal.

---

[5] In appellee's appeal in Cause No. 14-14-00599-CR, appellee contends the "trial court appears to have overruled that [legal sufficiency] ground in its order granting new trial." Regarding his pretrial motion to quash the indictment, appellee contends that the trial court "appears to have sustained that challenge."

[6] For example, the trial court found that the allegations in the indictment "varied from the material facts developed at trial which harmed the defendant and created a serious question of whether he was put on notice or was actually proven to have engaged in conduct" that satisfied criminally negligent homicide.  The trial court found that the "evidence at trial developed differently than the specific allegations" in two ways.  "First, the evidence showed that tractors do not turn as closely as possible to the right hand curb."  Second, "and, more importantly, the evidence failed to show that the tractor 'ran over' the pedestrian" because "the evidence showed there was no contact between the front of the tractor and the pedestrian, which indicates that the front of the tractor cleared the pedestrian."

[7] For example, the trial court found that the criminal charges were not brought by any law enforcement officers; the first time a charge was leveled was by a grand jury; and "[m]ore importantly, the accident report for this incident was changed two weeks before this criminal trial to reflect recklessness."

7

## II. ANALYSIS

In a single issue, the State contends the trial court abused its discretion by granting a new trial because (1) the evidence proved that appellee was criminally negligent; (2) there was no variance between the indictment and evidence; (3) the indictment alleged criminal reckless acts, and even if it did not, appellee was not harmed; and (4) there was no evidence of jury misconduct. Appellee responds that the State's appeal is jeopardy barred. Appellee also brings several "cross issues" alleging insufficient evidence.

We address appellee's jeopardy argument and then the trial court's granting of a new trial. First, we hold that the appeal is not jeopardy barred. Ultimately, however, we hold that the trial court erred to grant a new trial because appellee's substantial rights were not affected by any defect in the indictment. Thus, we sustain the State's third issue. We do not address appellee's issues about the sufficiency of the evidence, which may be raised in his appeal in Cause No. 14-14-00599-CR.

### A. No Double Jeopardy

The Fifth Amendment to the United States Constitution provides that no person shall be "subject to the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V; *State v. Blackshere*, 344 S.W.3d 400, 405 (Tex. Crim. App. 2011). The Double Jeopardy Clause prohibits multiple trials for the same offense. *See Blackshere*, 344 S.W.3d at 405. Double jeopardy is implicated by a State's appeal when the appeal "threaten[s] the defendant with an impermissible successive trial." *Id.* at 405–06.

In Texas, the State's authority to appeal the granting of a new trial is secured by statute. *See* Tex. Code Crim. Proc. Ann. art. 44.01(a)(3). The State's appeal of

a new trial order seeks to reinstate the jury's verdict, not subject the defendant to another trial. Accordingly, "double jeopardy does not bar the prosecution's appeal of a trial court's ruling which overturns a jury's guilty verdict." *State v. Savage*, 933 S.W.2d 497, 500 (Tex. Crim. App. 1996) (citing *United States v. Wilson*, 420 U.S. 332, 336 (1975)).

Appellee's first cross-issue is overruled.

## B. Basis for New Trial Order

Before addressing whether the trial court erred to grant a new trial, first we must determine what ground exactly the trial court granted. A trial court abuses its discretion if it grants a new trial to a criminal defendant based on a ground not urged in the defendant's motion. *State v. Hart*, 342 S.W.3d 659, 676 (Tex. App.— Houston [14th Dist.] 2011, pet. ref'd). It is clear from the trial court's order that it did not grant appellee's second ground regarding sufficiency of the evidence.[8] And the trial court did not order subpoenaing of the jurors or hear any evidence about juror misconduct. Thus, we limit our review to appellee's first ground for a new trial: the trial court's failure to quash the indictment due to inadequate allegations of recklessness.

## C. Legal Principles for New Trials and Motions to Quash

"The standard of review when a trial court grants a motion for a new trial is abuse of discretion." *State v. Thomas*, 428 S.W.3d 99, 103 (Tex. Crim. App.

---

[8] Appellee acknowledged that it "appears" the trial court overruled this ground, and he contends the trial court erred by "declining to rule on evidentiary sufficiency in the Order." But he also argues that the trial court "apparently found that the evidence was insufficient," although the trial court did not render a judgment of acquittal. On this record, it is clear the trial court did not sustain appellee's insufficient-evidence challenge. The trial court struck through the insufficient-evidence finding in the order granting a new trial, and the trial court did not conclude that the evidence was insufficient for criminally negligent homicide in its findings of fact and conclusions of law.

2014). "The test for abuse of discretion is not whether, in the opinion of the appellate court, the facts present an appropriate case for the trial court's action, but rather, whether the trial court acted without reference to any guiding rules or principles." *Id.* (quotation omitted). "A trial court abuses its discretion if it grants a new trial for a non-legal or a legally invalid reason." *Id.* at 104. "The trial court cannot grant a new trial based on mere sympathy, an inarticulate hunch, or simply because he personally believes that the defendant is innocent or received a raw deal." *Id.* (quotations omitted). A trial court "cannot grant a new trial unless the defendant shows that he is entitled to one under the law." *Id.* (quotation omitted). A trial court should not grant a new trial unless there is a "showing that substantial rights were affected." *Id.* at 105.

When a trial court rules on a motion to quash, an appellate court reviews the issue de novo. *See Smith v. State*, 309 S.W.3d 10, 13–14 (Tex. Crim. App. 2010). Even if the indictment is defective under Article 21.15, the error must be disregarded unless it affected the defendant's substantial rights. *See id.* at 19 (inadequate allegations under Article 21.15 is a defect of substance); *Mercier v. State*, 322 S.W.3d 258, 264 (Tex. Crim. App. 2010) (harmless error rule applies to defects of substance); *see also* Tex. R. App. 44.2(b). "[A] substantial right is affected when the error has a substantial and injurious effect or influence." *Mason v. State*, 322 S.W.3d 251, 255 (Tex. Crim. App. 2010). As part of the analysis of whether an Article 21.15 defect affected the defendant's substantial rights, a court must "determine whether, in the context of the case, the error had an impact on the defendant's ability to prepare a defense." *Haley v. State*, 396 S.W.3d 756, 771 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (citing *Adams v. State*, 707 S.W.2d 900, 903 (Tex. Crim. App. 1986)).

**D. Substantial Rights Not Affected**

For purposes of this appeal, we assume without deciding that the indictment was deficient under Article 21.15. Nonetheless, appellee has not explained how his substantial rights were affected in this case, and the trial court's only finding of harm related to how the evidence adduced at trial varied from the indictment's acts of alleged recklessness. Appellee was acquitted of the very crime for which he argues the indictment was insufficient. The jury found him guilty of the lesser-included offense of criminally negligent homicide. "Thus, the only possible harm [appellee] could have suffered as a result of the trial court's [pretrial refusal to quash the indictment] is that the court's refusal to quash the indictment rendered admissible testimony which otherwise would not have been admissible." *See Goss v. State*, 580 S.W.2d 587, 588 (Tex. Crim. App. [Panel Op.] 1979) (harmless error in failing to quash the indictment for aggravated rape due to its failure to specify who the defendant threatened with imminent infliction of death because (1) the defendant was convicted only of the lesser-included offense of rape and (2) evidence of threats would have been admissible in an ordinary rape prosecution).

Criminally negligent homicide is a lesser-included offense of manslaughter because the only difference between the offenses is that criminally negligent homicide requires proof of a less culpable mental state (criminal negligence) compared to manslaughter (recklessness). *Wasylina v. State*, 275 S.W.3d 908, 910 (Tex. Crim. App. 2009). The State may prove a less culpable mental state by proving a greater culpable mental state. *Id.* (citing Tex. Penal Code Ann. § 6.02(e)). Thus, evidence used to prove recklessness would be admissible to prove criminal negligence. *See id.* at 909–10 (evidence for criminally negligent homicide was sufficient when the evidence for manslaughter was sufficient even though there was no evidence that the defendant "failed to perceive the risk"

11

created by his conduct); *see also id.* at 914 (Meyers, J., dissenting) (noting that if the defendant is charged with criminally negligent homicide, the State may prove recklessness at trial).[9] Because appellant was acquitted of manslaughter and all of the evidence specific to recklessness would have been admissible to prove criminal negligence, the trial court could not have concluded that appellant's substantial rights were affected. *See Goss*, 580 S.W.2d at 588.

Further, after our review of the entire record, it is "obvious [appellee] was fully aware that the State alleged he recklessly caused the accident because" he observed Lopez sitting in the roadway, made a wide right turn at the intersection, and ran over her with his truck. *See Haley*, 396 S.W.3d at 771 (no harm in failing to quash indictment due to its failure to allege use of methamphetamine as a reckless act even though the defendant was convicted of the indicted offense of manslaughter). Appellee presented a vigorous defense with an expert witness who opined that appellee made a proper turn and did not strike Lopez, but rather, Lopez reached into the void of the truck behind the front wheel and ahead of the battery box. *See id.* (noting that the error did not impact the defendant's ability to prepare a defense because his expert witness testified that a medical condition and not methamphetamine caused the car crash).

Appellee did not show that his substantial rights were affected by the trial court's pretrial refusal to quash the indictment. Thus, he did not demonstrate that he was entitled to a new trial under the law. Nor did the trial court actually find that appellant's substantial rights were affected by a failure to quash the indictment. And no such finding is supported by the record. Accordingly, the trial

---

[9] *See generally Williams v. State*, 235 S.W.3d 742, 751 (Tex. Crim. App. 2007) (discussing difference between criminal negligence and recklessness).

court acted without reference to guiding rules or principles. The court abused its discretion.

The State's sole issue is sustained.

## III. CONCLUSION

Having overruled appellee's double-jeopardy cross-issue and sustained the State's sole issue, we reverse the trial court's order granting appellee a new trial, and we remand with instructions to reinstate the judgment of conviction and the sentence. *See State v. Thomas*, 426 S.W.3d 233, 242, (Tex. App.—Houston [1st Dist.] 2012), *aff'd*, 428 S.W.3d 99 (Tex. Crim. App. 2014).[10]


/s/        Sharon McCally
           Justice

Panel consists of Justices Boyce, McCally, and Donovan.

Do Not Publish — Tex. R. App. P. 47.2(b).

---

[10] We do not address appellee's issues concerning the sufficiency of the evidence as the issues are not properly before us in this appeal. Appellee's appeal in Cause No. 14-14-00599-CR will be reinstated after resolution of the appeal in this case.